THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DODO INTERNATIONAL INC., *et al.*,

                       Plaintiffs,

     v.

RICHARD PARKER, *et al.*,

                       Defendants.

CASE NO. C20-1116-JCC

ORDER

       This matter comes before the Court on Motion of Defendants Isotex Health LLC ("Isotex") and Jason Cross (together the "Isotex Defendants") to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 62), and Motion of Defendants Paul Donion and the Law Office of Paul M. Donion LLC (together "Donion") to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 45). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and GRANTS the Isotex Defendants' Motion to Dismiss for lack of personal jurisdiction and GRANTS in part and DENIES in part Donion's Motion to Dismiss.

## I.      BACKGROUND

       Plaintiff Dodo International, Inc. ("Dodo") and its principals, Plaintiffs Keith Fernandes and Vahram Dughestani (together "Plaintiffs"), are located in Canada. (Dkt. No. 41 at 2.) They hired Donion as their attorney to help them purchase cannabidiol (CBD) isolate. (*Id.* at 6). At

Donion's instruction, Plaintiffs deposited $747,300 in Donion's attorney trust account. (*Id.*)[1]
Donion then introduced Plaintiffs to suppliers of CBD isolate, with whom Plaintiffs later entered
ill-fated transactions. (*Id.* at 7.) Donion told Plaintiffs that he would also receive payment from
these suppliers. (*Id.*) In the first transaction, Donion introduced Plaintiffs to counterparties whom
they paid $47,300 for CBD isolate they never received. (*Id.*) The Isotex Defendants were not
involved in this transaction.

For the second transaction, Donion introduced Plaintiffs to Richard Parker of Alternative
Resource, Inc. (*Id.* at 8.) On February 27, 2019, Plaintiffs agreed to buy 1,000 kg of CBD isolate
per month for a year from Alternative Resource, which included an agreement to purchase 220
kg up front for $1.1 million with the remaining 780 kg to be purchased later. (*Id.*) Alternative
Resource agreed for Plaintiffs to escrow the purchase funds (ostensibly with Donion) until
Alternative Resource satisfied certain conditions. (*Id.*) Almost immediately, Alternative
Resource tried to change the terms of the deal: On March 1, 2019, Parker told Plaintiffs he would
not guarantee delivery unless they first wired "the full $700,000."[2] (*Id.* at 9.) Consistent with this
demand, Plaintiffs directed Donion to wire $700,000 to Isotex rather than Alternative Resource.
(*Id.* at 8–9.) This was another change from the original contract: Parker told Plaintiffs that Isotex,
not Alternative Resource, would fill their order. (*Id.*)

On March 3, 2019, Isotex sent Plaintiffs a Supply Agreement for the 220 kg purchase;
Cross, an Isotex principal, told Plaintiffs that they could collect 80 kg of that amount right away,
with the rest available a day later. (*Id.* at 10.) Cross also confirmed that Isotex had received

---

[1] The Complaint does not specify whether these funds belonged solely to Dodo or whether all
Plaintiffs comingled their funds. The Court assumes at this stage that the funds in question
belonged to each Plaintiff.

[2] The Complaint asserts that this "up front" part of the transaction involved buying 220 kg of
CBD isolate for $5,000 per kilogram, i.e., $1.1 million. (Dkt. No. 41 at 8.) Yet Plaintiffs refer to
"the full" $700,000. In addition to mathematical discrepancies, the alleged terms of this contract
do not entirely make sense: Plaintiffs agreed to buy 1,000 kg per month for $4800 for a year, i.e.,
12,000 kg for $57,600, but agreed to pay $1.1 million for only 220 kg at the outset of the deal.

Plaintiffs' $700,000 wire transfer. (*Id.* at 9.) The Complaint does not say whether Plaintiffs received the initial 80 kg tranche of the 220 kg CBD isolate order.

On March 5, 2019, someone (the Complaint does not say who) told Dughestani that Plaintiffs could pick up the remaining 140 kg at an address in Colorado. (*Id.* at 9.) Dughestani sent a UPS driver who returned empty-handed. (*Id.*) Someone (the Complaint does not say who) gave Dughestani false excuses for the failed pickup to cover for the fact that Isotex/Alternative Resource had simply failed to deliver the product. (*Id.*)

On March 6, 2019, Cross and Eugene Elfrank, another Isotex executive,[3] told Dughestani that yet another CBD supplier, Klersun LLC, would complete the order instead of Isotex, and that Klersun now had Plaintiffs' money. (*Id.* at 10.) The same day, Dughestani sent UPS to retrieve the 140 kg shipment, which the driver again could not find, despite Elfrank's assurance the product was available. (*Id.*)

Dughestani contacted Cross and Elfrank who falsely told him that the CBD isolate was being prepared for shipment and sent photos as purported proof. (*Id.* at 11.) Elfrank said he would travel to Klersun's facility to personally monitor the order. (*Id.*)

On March 10, 2019, Plaintiffs learned from Elfrank that their funds were no longer with Klersun but rather Gratziela Crisovan, yet *another* would-be supplier. (*Id.*) Crisovan later admitted that Plaintiffs' funds "had been transferred offshore." (*Id.*). Dughestani demanded a refund, but Isotex failed to provide one. (*Id.* at 11–12.)

On March 21, 2019, Isotex told Plaintiffs they could collect the 140 kg shipment in Florida. (*Id.* at 12.) Yet again, Plaintiffs' UPS driver could not find any product for pickup at the address Isotex had given. (*Id.*) Cross told Plaintiffs that Isotex had received $672,000 from Klersun for "the isolate transaction," but Isotex refused to remit any of this money to Plaintiffs.

---

[3] Elfrank's precise role with Isotex is unclear. Plaintiffs call him "President and co-founder" of Isotex (Dkt. No. 41 at 3) but also allege that Cross was Isotex's president, (*id.* at 9). The Court assumes at this stage that Elfrank is a non-owner officer of Isotex. (*See* Dkt. No. 61 at 2 (corporate disclosure statement not listing Elfrank as an Isotex member).)

1  (*Id.*) Donion served a demand letter on Isotex, which Isotex ignored. (*Id.*) Communications

2  devolved into a letter-writing campaign featuring demands, accusations, and eventually lawyers.

3  (*Id.* at 12–13.)

## II.   DISCUSSION

The Isotex Defendants seek dismissal for lack of personal jurisdiction under Rule

5  12(b)(2); in the alternative, Cross seeks dismissal under Rule 12(b)(6) of all Plaintiffs' claims

6  

7  against him (Counts 3–8), and Isotex seeks dismissal under Rule 12(b)(6) of all claims other than

8  breach of contract (Counts 3, 5–8). (Dkt. No. 62 at 2–3.)

9  Donion seeks dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) based

10  on an arbitration clause in his client engagement letter with Dughestani and Dodo; in the

11  alternative, he seeks dismissal under Rule 12(b)(6) of all the claims against him other than

12  professional malpractice and breach of fiduciary duty (Counts 3–7). (Dkt. No. 45 at 2–4.)

13  **A.   Isotex's and Cross's Motion to Dismiss for Lack of Personal Jurisdiction**

14      1.   <u>Legal Standard</u>

15      A court cannot hear a case against a defendant without personal jurisdiction. *See Daimler*

16  *AG v. Bauman*, 571 U.S. 117, 127–28 (2014). A plaintiff opposing dismissal for lack of personal

17  jurisdiction under Rule 12(b)(2) must make a *prima facie* showing that jurisdiction is proper. *See*

18  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Courts accept

19  uncontroverted jurisdictional allegations in the complaint and resolve conflicts in the plaintiff's

20  favor, but the plaintiff "cannot simply rest on the bare allegations of its complaint." *Id.* If the

21  plaintiff meets its burden, the defendant must show that exercising jurisdiction is unreasonable.

22  *See Ferrie v. Woodford Research, LLC*, 2020 WL 3971343, slip op. at 4 (W.D. Wash. 2020).

23      Personal jurisdiction depends on the forum state's long-arm statute and the Constitution's

24  Due Process Clause. *See Wilson v. PTT, LLC,* 351 F. Supp. 3d 1325, 1331 (W.D. Wash. 2018).

25  Washington's long-arm statute is coextensive with the Due Process Clause, so the constitutional

26  and statutory inquiries are the same. *Id.* There are two types of personal jurisdiction: general, "all

purpose," jurisdiction, and specific, "arising out of," jurisdiction. *Daimler*, 571 U.S at 127;
*Ferrie*, 2020 WL 3971343, slip op. at 4.

      2.   <u>General Jurisdiction</u>

     Defendants are subject to general jurisdiction in a state where their contacts are "so
'continuous and systematic' as to render them essentially at home." *See Daimler*, 571 U.S. at 127
(citation omitted). This is true of states where an individual is domiciled or where a corporate
entity is formed or has its principal place of business. *Id.* at 137.

     Plaintiffs do not contest that the Court lacks general jurisdiction over Cross. (Dkt. Nos.
41 at 2, 66 at 3–5.) They argue the Court has general jurisdiction over Isotex (a Texas LLC with
its principal office in Texas (Dkt. No. 41 at 6)) because Elfrank, an Isotex office, is domiciled in
Washington. (Dkt. No. 66 at 3–4.) Whether they're correct depends on two questions: (1) If
Elfrank's domicile makes Isotex a Washington citizen for purposes of diversity jurisdiction, does
it also do so for personal jurisdiction? If not, (2) does his Washington domicile nonetheless make
Isotex "at home" in Washington?

     The answer to both questions is "no." In determining diversity jurisdiction, an LLC "is a
citizen of every state of which its owners/members are citizens, not the state in which it was
formed or does business." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016)
(citation omitted). Plaintiffs concede, however, that courts do not "look at the members of a
limited liability company to determine personal jurisdiction, but [rather] the test is . . . whether a
. . . company is 'essentially at home' in the jurisdiction." (Dkt. No. 66 at 4–5 (citing *Carruth v.
Michot*, 2015 WL 6506550, slip op. at 7 (W.D. Tex. 2015)).)

     Applying this test, Elfrank's domicile in Washington—even while working for Isotex and
communicating with Plaintiffs (*see* Dkt. Nos. 66 at 4–5, 41 at 10)—is not sufficiently continuous
or systematic to confer general jurisdiction in Washington when Isotex has stronger, more
comprehensive ties to Texas. *See Daimler AG*, 571 U.S. at 139 n.20 ("A corporation that
operates in many places can scarcely be deemed at home in all of them."); *Mavrix Photo, Inc. v.*

*Brand Techs., Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011) (presence of agents in forum state is insufficient for general jurisdiction). The Court thus lacks general jurisdiction over the Isotex Defendants.

3.     <u>Specific Jurisdiction</u>

For specific jurisdiction, the defendant must, among other things, "purposefully direct his activities or consummate some transaction with the forum or a resident thereof" or must purposefully avail himself of the benefit of the forum's laws. *Schwarzenegger*, 374 F.3d at 802. Purposeful "availment" and "direction" are distinct concepts; the former applies to contract cases and the latter to tort cases. *Id.* In cases with both types of claims "both tests are relevant." *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). "At bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (citation omitted).

The "purposeful availment" test asks whether the defendant purposely availed itself of the privilege of transacting in the forum state and "the benefits and protections of its laws." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). For "purposeful direction," courts apply the three-part test from *Calder v. Jones*, 465 U.S. 783 (1984), which asks whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum, (3) causing harm that it knows is likely to be suffered there. *Mavrix Photo, Inc.*, 647 F.3d at 1228.

Plaintiffs fail to establish specific jurisdiction under either test. The only arguable grounds for specific jurisdiction are (1) contact between the Isotex Defendants and Donion, who was in Washington; and (2) Elfrank's domicile in Washington. Neither is adequate.

<u>First</u>, the Complaint does not actually allege that the Isotex Defendants communicated with Donion. (*See* Dkt. No. 41 at 8 (Richard Parker introduced Plaintiffs to the Isotex Defendants).) Plaintiffs offer a text message chain apparently involving both Cross and Donion,

but Cross does not actually talk to Donion in the chain. (*See* Dkt. No. 66 at 52–54.) More fundamentally, the Complaint establishes that any contact between the Isotex Defendants and Donion occurred not because Isotex purposefully oriented its conduct toward Washington, but because Donion was Plaintiffs' lawyer. The Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), forecloses using Donion as a jurisdictional anchor in that scenario. *Walden* holds that specific jurisdiction "must arise out of contacts that the defendant *himself* creates with the forum." 571 U.S. at 284. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. The fact that Plaintiffs hired a lawyer who happened to be in Washington does not confer specific jurisdiction over people who spoke to the lawyer.

Nor does Elfrank's domicile in Washington establish purposeful conduct aimed toward Washington. Elfrank's conduct alleged in the Complaint—communicating with Dughestani, or flying to Klersun's facility to monitor Plaintiffs' order—flowed *out of* Washington, either toward Plaintiffs in Canada or to unspecified locations. This is not the type of purposeful, Washington-focused conduct from which Elfrank's employer or his business partner could reasonably anticipate being haled into Washington's courts. Moreover, none of the other conduct Plaintiffs cite for specific jurisdiction—Isotex sending a Supply Agreement, Cross and Elfrank communicating with Plaintiffs, failed deliveries in Colorado and Florida, or an outgoing wire transfer from Donion's trust account—involves purposeful direction or availment by the Isotex Defendants.

The Court thus lacks specific personal jurisdiction over the Isotex Defendants. Because Plaintiffs submitted documentary evidence with their opposition brief (*See* Dkt. No. 66 at 55), the Court concludes that neither amended pleadings nor jurisdictional discovery would establish personal jurisdiction in Washington. However, the Court dismisses Plaintiffs' claims against the Isotex Defendants without prejudice, since another court with appropriate jurisdiction could resolve their dispute. *See Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005).

1

2

**B.      Donion's Motion to Dismiss Based on an Arbitration Clause**

1.      Legal Standard

3

4

Donion seeks dismissal for lack of subject matter jurisdiction based on an arbitration

clause in his engagement letter with Plaintiffs. (Dkt. Nos. 45–46.) Rule 12(b)(1) is not the way to

5

enforce such a clause. *See Munger v. Cascade Steel Rolling Mills, Inc.*, 332 F. Supp. 3d 1280,

6

1286–89 (D. Or. 2018) (collecting cases). Arbitration clauses are agreements to waive litigating

7

in court; they do not deprive the court of subject matter jurisdiction. *See City of Benkelman v.*

8

*Baseline Eng'g Corp.*, 867 F.3d 875, 880–81 (8th Cir. 2017). Courts have instead applied Rule

9

12(b)(3), dismissal for improper venue, reasoning that arbitration clauses are like forum-

10

selection clauses. *See, e.g.*, *Brennan v. Opus Bank*, 2013 WL 2445430, slip op. at 3 (W.D. Wash.

11

2013). But that approach no longer works after the Supreme Court disapproved using Rule

12

12(b)(3) to enforce forum-selection clauses. *See Atl. Marine Constr. Co. v. U.S. Dis. Ct.*, 571

13

U.S. 49, 55–59 (2013).

14

Rule 12(b)(6) is another option, but it is not "a particularly viable solution," since a

15

defendant invoking an arbitration clause must often present evidence outside the pleadings.

16

*Munger*, 332 F. Supp. 3d at 1288.[4] Because Donion's arbitration clause is in a contract not

17

mentioned in the Complaint, the Court must treat his motion as one for summary judgment. *See*

18

Fed. R. Civ. P. 12(d). This is the same as construing it as a motion to compel arbitration. *See City*

19

*of Benkelman*, 867 F.3d at 882; *Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764,

20

776 (3d Cir. 2013) (Rule 12(b)(6) governs a motion to compel arbitration if the existence and

21

enforceability of the clause is apparent from the face of the complaint; otherwise the summary

22

judgment standard applies).

23

Under the Federal Arbitration Act ("FAA"), the Court's review is limited to deciding

24

whether an arbitration clause (1) is valid, and (2) covers the dispute at issue. *See Nguyen v.*

25

26

[4] A court may consider a document that is merely mentioned in the complaint if it is central to the claim and authenticity is undisputed. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). But the Complaint here does not mention Donion's engagement letter at all.

1    *Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). To determine validity, federal courts

2    apply ordinary state-law principles of contract formation. *Id.* Common law defenses such as

3    unconscionability can thus invalidate an arbitration clause. *Chavarria v. Ralphs Grocery Co.*,

4    733 F.3d 916, 921 (9th Cir. 2013) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333

5    (2011)). Summary judgment is proper if there is no genuine dispute as to any material fact and

6    the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment

7    is atypical where, as here, the pleadings are unsettled and little (if any) discovery has occurred.

8    But there are three factors that make it appropriate for the Court to address Donion's request to

9    enforce the arbitration clause. First, the Court's inquiry is narrow, limited by the FAA to the

10   validity and scope of the arbitration clause. Second, Plaintiffs acknowledge the authenticity of

11   the engagement letter containing the clause. Third, the arguments before the Court can (with one

12   exception)[5] be resolved either on the current record or on purely legal grounds.

13       2.    Validity of Arbitration Clause

14              a.  *Procedural Unconscionability*

15       Plaintiffs argue that the arbitration clause is procedurally unconscionable because Donion

16   failed to disclose it. (*See* Dkt. No. 47 at 7–9.) Procedural unconscionability depends on (1) the

17   manner in which the parties entered into the contract, (2) whether the parties had a reasonable

18   opportunity to understand its terms, and (3) "whether the terms were hidden in a maze of fine

19   print." *Smith v. Jem Grp., Inc.*, 737 F.3d 636, 640 (9th Cir. 2013). Within this framework, the

20   touchstone for enforceability of an arbitration clause in a lawyer's engagement letter is

21   Washington Rule of Professional Conduct (RPC) 1.5(a)(9), which asks "whether the fee

22   agreement or confirming writing demonstrates that the client had received a fair and reasonable

23   disclosure of material elements of the fee agreement." *Mann Law Grp. v. Digi-Net Techs., Inc.*,

24   2014 WL 535181, slip op. at 3–5 (W.D. Wash. 2014) (citing Wash. RPC 1.5(a)(9)).

25   _____

26   [5] As set forth in greater detail below, the Court cannot determine on the current record whether
     Fernandes is subject to Donion's arbitration clause.

The arbitration clause in Donion's engagement letter does not advise the counterparty regarding the desirability of consulting with separate counsel, nor does it explicitly state that arbitration would mean foregoing a lawsuit in court. By themselves, though, these failings do not trigger procedural unconscionability. That is because RPC 1.5(a)(9) requires only "fair and reasonable disclosure of the material elements" of an engagement letter, including any arbitration clause. When Washington wants to impose higher disclosure standards on lawyers contracting with clients, it does so explicitly, as in RPC 1.8(a)(2)–(3), which expressly requires advising the client in writing "of the desirability of seeking . . . the advice of independent legal counsel." "No authority of which the [C]ourt is aware suggests that this higher standard applies to fee agreements or to RPC 1.5." *Mann Law Grp.*, 2014 WL 535181 slip op. at 5.

Here, Plaintiffs do not argue that Donion had asymmetric bargaining power or used high-pressure tactics or a "maze of fine print" to hide the arbitration clause or get a signature. Nor do they urge the Court to disregard Donion's engagement letter on procedural grounds or let them take discovery to prove unconscionability. Instead, they simply assert that Donion "failed to . . . provide a reasonable opportunity for Plaintiffs to seek advice" from separate counsel. (Dkt. Nos. 41 at 7, 47 at 4.) This conclusory assertion is insufficient. First, Plaintiffs seemingly abandon it by not mentioning it in the argument section of their brief. (*See* Dkt. No. 47 at 6–13.) Second, they do not argue that discovery would help substantiate this assertion, despite making discovery-based arguments in resisting arbitration on other grounds. (*Id.* at 6–7 ("[E]xamination of all documentary evidence of the case in its entirety would reveal that Plaintiffs are not subject to compulsory arbitration . . . because Plaintiff Fernandes did not expressly consent to this mode of dispute resolution . . . .").) Third, Plaintiffs indicate that it was they who initiated contact with Donion (Dkt. No. 41 at 6), undermining the idea that he rushed them through an unfair contracting process. Fourth, under the strong federal policy of enforcing arbitration clauses, doubts around the arbitrability of claims should be resolved in favor of arbitration. *See, e.g.*, *Shikov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020).

At bottom, Plaintiffs' sole procedural unconscionability argument is that Donion failed to disclose the arbitration clause in violation of RPC 1.5(a)(9). The record shows that simply was not the case. The arbitration clause appears under the bold heading "**Arbitration**." (Dkt. No. 46 at 5.) It discusses the process of selecting and paying an arbitrator, necessarily (if not explicitly) indicating that disputes will not be resolved in court. (*See id.*) The engagement letter is only three pages long, with the clause at the end of page two, right above where Dughestani signed. (*Id.*) There is thus no genuine dispute that Donion disclosed the arbitration clause. As a result, Plaintiffs fail as a matter of law to show procedural unconscionability. *See Mann Law Grp.*, 2014 WL 535181 slip op. at 5 (because the issue is disclosure of the clause, evidence that a lawyer "did not separately mention the arbitration clause or otherwise advise [Plaintiffs] about it," would not make disclosure inadequate).

### b.  Substantive Unconscionability

Plaintiffs also argue the arbitration clause is substantively unconscionable because it requires a "loser pays" outcome. (Dkt. No. 47 at 12.) A clause is substantively unconscionable if it is so one-sided that enforcement would be "monstrously harsh," calloused, or shocking. *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013). These labels do not fit a fee-shifting provision in a dispute resolution clause. *See Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 768 (Wash. 2004). It also is not clear that Donion's arbitration clause even contains a fee-shifting provision, since that part of the clause is nearly unintelligible due to a typo. (Dkt. Nos. 47 at 11–12, 46 at 5.)[6] Based on this analysis, there can be no genuine dispute that the arbitration clause is enforceable.

### 3.   Scope of Arbitration Clause

Donion's arbitration clause covers all of Plaintiffs' claims since it applies to "any

---

[6] Contrary to Plaintiffs' argument, resolving that ambiguity is a task for the arbitrator, not a bar to enforcement.

1    disputes . . . between us as to . . . any matter relating to our representation of you." (Dkt. No. 46

2    at 5.) Less clear is which Plaintiffs the clause applies to. It applies to Dughestani, who signed the

3    engagement letter. Although Dodo did not sign, the parties agree that they intended the

4    engagement letter to bind Dodo, too. (*See* Dkt. No. 45 at 3 ("Plaintiffs Dughestani and Dodo are .

5    . . parties to an Agreement to Employ Counsel with Donion . . . ."); Dkt. No. 47 at 6 (referencing

6    the "Attorney Retainer Agreement . . . between Defendant Donion and Plaintiff Dodo executed

7    by Plaintiff Dughestani on Dodo's behalf").)

8        That leaves Fernandes. Donion argues that the arbitration clause binds Fernandes as a

9    third-party beneficiary. (Dkt. No. 49 at 4.) A person is a third-party beneficiary if performing the

10   contract requires the promisor to confer a benefit on that person. *Tacoma Auto Mall, Inc. v.*

11   *Nissan N. Am., Inc.*, 279 P.3d 487, 497 (Wash. Ct. App. 2012). If this were true as to Fernandes,

12   it might let him enforce certain parts of the engagement letter but would not necessarily let

13   Donion enforce an arbitration clause that Fernandes never agreed to. *See* David K. DeWolf et al.,

14   25 WASHINGTON PRAC., CONTRACT LAW & PRACTICE § 12:7 (3d ed.) ("A beneficiary may not,

15   however, be held liable under the contract because a third-party beneficiary is a beneficiary only

16   and owes no duties (unless, of course, the beneficiary owes a duty to one of the parties based

17   upon some relationship independent of the third-party beneficiary status)."). Arbitration

18   agreements can encompass nonsignatories under contract and agency principles such as (1)

19   incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5)

20   estoppel. *See Woodall v. Avalon Care Ctr.-Federal Way, LLC*, 231 P.3d 1252, 1254 (Wash. Ct.

21   App. 2010). But under a summary judgment standard, the record is insufficient to determine as a

22   matter of law whether such doctrines require applying the arbitration clause to Fernandes.

23   Accordingly, the Court GRANTS Donion's motion to compel arbitration as to the claims of

24   Dughestani and Dodo but DENIES it without prejudice as to Fernandes's claims.

25   **C.    Donion's Motion to Dismiss for Failure to State a Claim**

26       Because the Court does not dismiss Fernandes's claims based on the arbitration clause,

ORDER
C20-1116-JCC
PAGE - 12

the Court addresses Donion's request in the alternative for dismissal under Rule 12(b)(6).[7] "To survive motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court assumes the truth of all plausible, non-conclusory allegations in the complaint. *See id.* at 681. However, "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). A plaintiff must give detailed factual support raising the right to relief above the speculative level. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Although the Court holds that an inadequate record precludes deciding under a summary judgment standard whether the arbitration clause applies to Fernandes, for purposes of Donion's Rule 12(b)(6) motion, the Court assumes the truth of the allegation that "FERNANDES . . . hired attorney Defendant Donion for representation of the purchase of CBD isolate." (Dkt. No. 41 at 6.)

1. Fraud (Count 3)

A Washington fraud claim requires (1) a representation of existing fact that is (2) material and (3) false, (4) known by the speaker to be false, and (5) intended to induce reliance (6) by a plaintiff ignorant of falsity, (7) who in fact relies on the representation, (8) had a right to rely on it, and (9) as a result, suffered damages. *See Baker Boyer Nat'l Bank v. Foust*, 436 P.3d 382, 386 n.4 (Wash. Ct. App. 2018). Rule 9(b) requires that fraud claims be alleged with particularity, meaning that Fernandes must allege "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about the statement and why it is false." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (cleaned up).

Fernandes identifies two bases for his fraud claims against Donion. First, he alleges

---

[7] Plaintiffs argue that they state a claim against Donion for negligent misrepresentation (Dkt. No. 47 at 21), even though they have not sued Donion on this claim, (*see* Dkt. No. 41 at 19–23 (Donion is not a defendant for Count 8)). The Court rejects this argument. Fernandes may not sue Donion on a negligent misrepresentation claim the Complaint does not assert against him.

1   "Defendants" gave false information about the availability, shipping, and vendors of CBD isolate

2   products. (Dkt. No. 41 at 15.) Allegations against a unitary bloc of "Defendants" are inadequate

3   under even Rule 8(a) pleading standards because they do not specify who is allegedly

4   responsible for what wrongful conduct. *See Regents of the Univ. of Cal. v. Aisen*, 2016 WL

5   4096078, slip op. at 3 (S.D. Cal. 2016) (collecting cases that hold "a complaint fails to state a

6   claim if it does not indicate which individual defendant or defendants are responsible for which

7   alleged wrongful act").

8       Second, Fernandes alleges that Donion falsely "represented that he had identified a

9   reputable seller of CBD isolate." (Dkt. Nos. 41 at 7–8, 47 at 16.) But general statements about

10   reputation do not qualify as representations of existing fact required for a fraud claim. *See, e.g.*,

11   *Garza v. State Farm Lloyds*, 2013 WL 3439851, slip op. at 5 (S.D. Tex. 2013) ("The words

12   'quality,' [and] 'reputable,' . . . are the sort of non-specific words that accompany statements of

13   opinion and puffery."); *Cf. In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 647

14   (S.D.N.Y. 2017) ("The quintessential examples of . . . inactionable puffery are general

15   statements about reputation, integrity, and compliance with ethical norms . . . ." (citation

16   omitted)).

17       Fernandes urges the Court to relax Rule 9(b)'s pleading standard because Donion

18   possesses most of the evidence needed to establish fraud. (Dkt. No. 47 at 15.) But a lower

19   pleading standard would not help. Fernandes's allegations against unspecified "Defendants" are

20   conclusory even under the *Twombly/Iqbal* standard, and statements about reputation cannot

21   support fraud claims regardless of the standard. Fernandes thus fails to state a claim for fraud

22   against Donion.

23       2.   Breach of Contract (Count 4), Good Faith and Fair Dealing (Count 5), Promissory
             Estoppel (Count 6)

24

25       Fernandes fails to state a contract claim against Donion because he does not identify any

26   contractual duty to him that Donion breached. Read in the light most favorable to Plaintiffs, the

1   Complaint arguably does allege that Donion entered an agreement with Plaintiffs to introduce

2   them to potential CBD suppliers. (*See* Dkt. No. 47 at 17.) But nowhere does Fernandes allege

3   that Donion failed to do that. Instead, Fernandes's claims are based on the suppliers' alleged

4   breaches. Nothing in the Complaint would justify making Donion a guarantor for other

5   Defendants' performance, which is effectively what Ferndandes seeks to do.

6        Failing to state a contract claim means that Fernandes also fails to state a good-faith-and-

7   fair-dealing claim. There is no freestanding duty of good faith and fair dealing under Washington

8   law; it exists only in relation to specific contract terms. *See, e.g.*, *Hard 2 Find Accessories, Inc.*

9   *v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1173 (W.D. Wash. 2014). Again, even if there is an

10  agreement for Donion to introduce Plaintiffs to CBD isolate suppliers, Fernandes's good-faith-

11  and-fair-dealing claim is based on the *suppliers'* alleged conduct, not Donion's. (*See* Dkt. No. 41

12  at 17–18 (Plaintiffs' good-faith-and-fair-dealing claim does not mention Donion at all).)

13        The same problem afflicts Fernandes's promissory estoppel claim: Nowhere does the

14  Complaint allege that Donion made Fernandes a promise on which Fernandes relied and Donion

15  failed to follow through. Fernandes's Counts 3–6 thus fail to state claims for relief.

16        3.    <u>Consumer Protection Act (Count 7)</u>

17        A claim under Washington's Consumer Protection Act ("CPA") requires (1) an unfair or

18  deceptive act or practice, (2) occurring in trade or commerce, (3) impacting the public interest,

19  (4) injuring the plaintiff's business or property, and (5) causation. *See Hard 2 Find*, 58 F. Supp.

20  3d at 1174–75. Donion asserts that Fernandes fails to establish the third (public interest) and fifth

21  (causation) prongs of this test. (Dkt. No. 45 at 11–12.) He is correct.

22         *a.  Public Interest Impact*

23        In determining if conduct impacts the public interest, courts consider whether: (1) the acts

24  were committed in the course of the defendant's business; (2) the acts were part of a pattern or

25  generalized course of conduct; (3) similar acts occurred before those involving plaintiff; (4) there

26

is a real and substantial potential for repetition of the disputed conduct; (5) the parties have unequal bargaining positions; (6) the defendant advertised to the general public; and (7) the defendant actively solicited the particular plaintiff or others. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 537–38 (Wash. 1986); *Sloan v. Thompson*, 115 P.3d 1009, 1016 (Wash. Ct. App. 2005).

As Donion points out, a private contract dispute typically does not impact the public interest. (Dkt No. 45 at 11–12.) But that is not dispositive if other people likely have been or will be injured in the same way as the plaintiff. *See Hangman Ridge*, 719 P.2d at 538. The Complaint here arguably hints at such a risk: Donion allegedly represented Fernandes despite significant conflicts of interest that, even if disclosed, were seriously mishandled and led to Donion's alleged business associates defrauding his clients. (Dkt. No. 41 at 6–8, 15.) This could certainly harm the public if done routinely to a lawyer's clients. Donion has also been accused in a separate lawsuit of misconduct relating to the sale of CBD isolate.[8]

These threads, however, are insufficient to establish "a real and substantial potential" that other people have been or will be harmed. *Hangman Ridge*, 719 P.2d at 538. First, Plaintiffs do not actually allege anything suggesting that Donion did to other clients what he allegedly did to them. Even if Plaintiffs did, the Court judicially notices that Donion has resigned in lieu of discipline from the Washington State Bar Association, effective November 2020,[9] which reduces the likelihood of any alleged misconduct recurring.

Second, Plaintiffs do not allege that Donion solicited them or advertised to prospective clients. Instead, they assert "[t]he scheme was initiated when the *Plaintiffs* . . . hired attorney

---

[8] The Court takes judicial notice of the existence of the complaint filed in *Colorado Sky Industrial Supply, LLC v. Easy Street Services Co., et al.*, Case No. C19-1774-KMT, Dkt. No. 39 (D. Colo. 2019), in which Donion was named as a defendant. The Court has neither reviewed nor considered the substantive allegations in that case in deciding Donion's motion to dismiss.

[9] *See In re Paul Michael Donion (Bar No. 25053)*, Proceeding No. 20#00061 (Wash. State Bar Ass'n Disciplinary Bd. 2020).

defendant DONION for representation of the purchase of CBD isolate." (Dkt. No. 41 at 6) (emphasis added). This negates their unsupported assertion that Donion "advertises himself as an attorney that can help facilitate high value transactions and investments," and "actively solicited the Plaintiffs with regards to his ability to secure CBD [i]solate." (Dkt. No. 47 at 18) (not citing allegations in the Complaint).[10] Fernandes thus fails to satisfy the public interest prong of his CPA claim.

### b. Causation

Fernandes' allegations establish that Donion was the factual, "but for" cause of the alleged injury. But proximate cause is a separate requirement of a CPA claim. *See Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 706 (9th Cir. 2001). The Complaint alleges that Fernandes's injury occurred because Defendants other than Donion failed to deliver promised CBD products or refund Plaintiffs' payments. (*See* Dkt. No. 41 at 53–58.) Fernandes does not assert that these failures were Donion's doing or explain how they might have been a reasonably foreseeable result of Donion's conduct. In fact, Fernandes alleges that Donion assisted Plaintiffs in attempting to recover the spent funds. (*Id.* at 12 (alleging that Donion sent Isotex a demand for payment).) Fernandes thus fails to properly allege proximate causation and, consequently, to state a CPA claim.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.      The Isotex Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. (Dkt. No. 62) is GRANTED. Plaintiffs' claims against Isotex and Cross are DISMISSED without prejudice to refiling in a court with appropriate jurisdiction.

2.      Donion's motion to compel arbitration is GRANTED with respect to Dodo and

---

[10] Even if Plaintiffs did allege that Donion solicited Plaintiffs or advertised in the manner their opposition brief asserts, Plaintiffs do not explain why the mere fact that Donion failed to succeed in accomplishing the goals of his representation renders any such communications unfair or deceptive as required to state a CPA claim.

Dughestani's claims, which are DISMISSED with prejudice; however, the motion is DENIED without prejudice with respect to Fernandes's claims.

3.      As to Fernandes's claims, Donion's motion to dismiss Counts 3–7 of the First Amended Complaint for failure to state a claim is GRANTED. Fernandes's claims against Donion in Counts 3–7 are DISMISSED without prejudice.

4.      Within 30 days of the date of this Order, Plaintiffs will file an amended complaint that omits the dismissed claims and addresses the problems with Fernandes's claims against Donion in Counts 3–7. Failure to meet this deadline will result in Fernandes's claims against Donion in those counts being dismissed without further notice.

DATED this 7th day of September 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE